# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENDRA SMITH,** | : | **Civil No.  3:16-CV-1456** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN COLVIN,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

In this Social Security appeal we most assuredly do not write upon a blank slate. Quite the contrary, this is Kendra Smith's second application for Social security benefits. On September 15, 2009, the plaintiff protectively filed applications for SSI payments and Childhood Disability Insurance Benefits alleging a disability onset of June 3, 2005 after she was injured in an automobile accident ("First Applications"). These initial 2009 applications were denied on February 19, 2010 and there is nothing in the administrative record to suggest that Smith further pursued the denial of these initial applications.

Instead, on July 29, 2010, Smith filed a second application for SSI benefits, which alleged an initial onset of disability in August of 2009. This second

application is now before the court, has been the subject of extensive administrative agency proceedings over the past eight years, and has been the subject of one prior appeal to the United States District Court, an appeal which resulted in a remand of this case in July of 2014 for further proceedings. Stine v. Colvin, Civil No. 3:13-CV-884. (Doc. 25.)

It is this protracted appeals process that now sets the stage for the current litigation. In the instant appeal we are now called upon to assess one important aspect of this protracted decision making process, and evaluate the weight which an Administrative Law Judge ("ALJ") placed upon a December 2009 evaluation by a non-treating, non-examining state agency expert's report in December of 2015 when the ALJ denied Smith's disability benefit application following this court's 2014 ruling remanding this case for further consideration. In its December 2015 decision, the ALJ "generally assign[ed] significant weight to this opinion," (Tr. 1018), a judgment which we find to be problematic on numerous scores.

First, this judgment gave significant weight to a non-treating, and non-examining opinion which was rendered by a state agency physician in connection with Smith's first application, and afforded that opinion significant weight in adjudicating a second, and different application. Second, while affording significant weight to this temporally remote non-examining and non-treating

source opinion, the ALJ rejected a more recent and contemporaneous treating source opinion which found that Smith was wholly disabled. Third, the ALJ's reliance on this December 2009 non-treating and non-examining source opinion failed to sufficiently take into account a host of medical complications experienced by Smith *after* this opinion was first issued, including spinal fusion surgery, and extensive chronic pain treatments spanning from 2010 through 2015. Fourth, the rationale for the ALJ's decision to afford this temporally remote opinion significant weight—the ALJ's conclusion that this 2009 opinion was consistent with the longitudinal medical records from 2009 through 2015—was not fully supported by this medical record, which contains substantial evidence documenting on-going and significant chronic pain experienced by Smith. Fifth, and perhaps most troubling, we are constrained to observe that the ALJ's reliance on this temporally remote non-treating and non-examining opinion increased over time without an adequate explanation for how that opinion gained greater credence as it became more remote in time from Smith's actual medical condition. Specifically, when the ALJ first considered this particular opinion in the initial decision denying benefits to Smith in April of 2012, the ALJ gave this 2009 opinion little weight observing that "this opinion overstates the claimant's limitations." (Tr. 1081.) Three years later in December of 2015, when the ALJ

considered the same medical opinion following the remand of the case to the Commissioner for further proceedings, the ALJ now "generally assign[ed] significant weight to this opinion," (Tr. 1018), without an adequate explanation of how this opinion had gained greater credence over time.

Taking all of these factors into consideration, we find that we lack sufficient confidence in this assessment of the medical opinion evidence to conclude that the ALJ's evaluation of this medical opinion proof is supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3). Therefore, for the reasons set forth below, that decision will be vacated and remanded for further proceedings consistent with this opinion and order.

## II.  **Statement of Facts and of the Case**

This is Kendra Smith's second application for Social Security benefits. On September 15, 2009, the plaintiff protectively filed applications for SSI payments and Childhood Disability Insurance Benefits alleging a disability onset of June 3, 2005 after she was injured in an automobile accident ("First Application"). In connection with this initial application, a state agency physician, a non-treating and non-examining source, reviewed the medical records available to this physician in December of 2009 and opined that Smith suffered from severe back impairments, but retained the capacity to perform some limited sedentary work. (Tr. 705-711.)

In the six years which followed this December 2009 assessment by the state agency physician there were a host of intervening legal, medical and factual developments that affected Smith's disability claim, none of which were, or could have been, considered by the state agency physician when she issued this initial guarded opinion in December of 2009. For example, in January 2010, Smith complained of incapacitating back pain. (Tr. 832.) Diagnostic studies showed disc space narrowing with focal degeneration, but no nerve root compression. (Id.) Two months later, on March 4, 2010, Smith underwent a spinal fusion surgery. (Tr. 764.) This surgery did not, however, alleviate Smith's complaints of chronic back pain. Quite the contrary, in April and May of 2010, Smith reported that her pain had not improved following surgery. (Tr. 806, 812.)

This chronic back pain led Smith to submit a second application for SSI benefits on July 29, 2010. This application is the claim that is now at issue in this case. Smith's July 2010 application alleged an onset of disability beginning in August of 2009 based upon a series of medical conditions which had been the subject of intensive treatment in 2010, including degenerative disc disease, chronic pain, lumbar radiculopathy, fibromyalgia, depression and anxiety. (Tr. 1009.) Thus, on its face, Smith's second disability application embraced only a brief period of time encompassed by her prior application and a narrow window of time

examined by the state agency non-treating and non-examining source's December 2009 opinion. However, this claim also extended far beyond the very limited time frame considered by the state agency physician in December of 2009, and encompassed extensive treatment, including spinal fusion surgery, that Smith received after this December 2009 opinion was issued by the state agency physician.

As Smith pursued this second disability claim, she also continued to undergo extensive medical care and treatment for chronic back pain. Thus, while Smith's surgeon reported some improvement in her condition in June and August of 2010, (Tr. 810-11), she reported that she was feeling "extremely frustrated and depressed" with continued "excruciating radicular pain" when Smith was seen by her primary care physician/internal medicine specialist, Dr. Abroo Nawaz, in September 2010. Dr. Nawaz diagnosed Smith as suffering from lumbar degenerative disc disease, fibromyalgia, and depression with anxiety. The doctor adjusted Smith's medications and suggested she continue aqua therapy. When her condition had not improved, in October 2010, Dr. Nawaz again adjusted Smith's medications and referred her to Hershey Medical Center ("HMC") for a second opinion regarding her back symptoms. (Tr. 915-922.) By October 2010, Smith was being seen at HMC for an evaluation of her chronic back pain. (Tr. 893). The

clinical results of this evaluation were mixed. Smith was able to stand and walk on her heels and toes without difficulty, and she displayed a normal heel-to-toe gait. (Tr. 894.) However, she claimed that she needed to use a cane for ambulation at home; she had a positive straight leg raise test on the right side, but negative on the left; she had full strength in her lower extremities, and full sensation in her left leg, but diminished sensation in the lateral aspect of her right upper and lower leg; and she displayed poor limited range of motion in all planes. (Tr. 894.)

A second post-operative consult in December of 2010 at HMC for Smith's chronic back pain yielded similar mixed results. At that time, Smith continued to complain of unrelieved pain following her surgery. (Tr. 888.) On examination, Smith had no deficits in neurological function, but displayed an antalgic gait. (Tr. 889.) Despite her limp, Smith was able to walk on her heels and toes. (Tr. 889.) She displayed normal strength, but had "ratchety giveaway strength" with right ankle dorsiflexion. (Tr. 889.) Straight leg raise testing was positive in the supine position, but she was negative in the seated position. (Tr. 889.)

Based upon this medical record, which contained significant new information beyond that which was available to the state agency physician in December of 2009, Smith's primary care physician, Abroo Nawaz, M.D., completed a functional capacity assessment on February 8, 2011, in which he

found that Smith was not capable of performing even limited part-time work. In particular, Dr. Nawaz concluded that Smith could only occasionally lift and/or carry up to ten pounds; (Tr. 897), could stand or walk for less than two hours in an eight-hour workday, and sit for less than two hours in an eight-hour workday due to pain; (Tr. 897-98), would be limited in her ability to push or pull with her lower extremities; and could never climb, balance, crawl, or twist, and could occasionally stoop, kneel, crouch, and bend. (Tr. 898-99.) Dr. Nawaz recounted that Smith was in constant pain, would likely be absent from work more than three times per month, and found that she was incapable of performing even part-time sedentary work due to her chronic back pain. (Tr. 901.)

It was against this medical background that the ALJ conducted an initial hearing into Smith's claim on December 5, 2011, (Tr. 33-69), and issued the first decision denying that claim on April 12, 2012. (Tr. 1072-83.) This April 2012 decision addressed the state agency physician's December 2009 medical opinion which now lies at the heart of this appeal in a summary and dismissive fashion largely discounting that opinion and observing that "this opinion overstates the claimant's limitations." (Tr. 1081.) Smith appealed this ruling, and in July of 2014 the district court ordered this case remanded to the Commissioner for further proceedings in light of the ALJ's failure at Step 2 of the analytical paradigm that

applies to Social Security appeals to acknowledge that a well-documented medical condition experienced by Smith, lumbar radiculopathy, was a medically determinable severe impairment. Stine v. Colvin, Civil No.3:13-CV-884. (Doc. 25.)

On remand, the ALJ received additional medical records which confirmed that Smith continued to seek treatment for chronic back pain, while providing mixed information regarding the severity of that pain. Thus, Smith's medical history indicated that she saw Dr. Brian Steinmetz one time, on December 31, 2014, for her low back pain, radiculopathy and numbness. Upon examination Dr. Steinmetz diagnosed Smith with low back pain and neuritis or radiculitis, and recommended a lumbar epidural steroid injection as treatment for this back pain. (Tr. 1408-1411.) Two months later, in February of 2015, Smith began treating with Dr. Kochumol Thomas. During his initial examination, Dr. Thomas found that Smith was still experiencing tenderness and moderate pain with lumbar spine motion. Consequently, he referred Smith to the pain clinic for treatment of her back-related symptoms. (Tr. 1461-1467.) On April 14, 2015, Smith saw pain management specialist, Dr. Amanpreet Sandhu, who diagnosed her with lumbar spondylosis, degenerative disc disease, and radiculopathy. Dr. Sandhu subsequently performed bilateral lumbar facet steroid injections to alleviate this

pain. On July 7, 2015, Dr. Sandhu also administered bilateral lumbar medial branch blocks to Smith's spine along with a caudal epidural steroid injection. On July 14, 2015, Dr. Sandhu diagnosed Smith with lumbar spondylosis without myelopathy; intervertebral disc displacement of the lumbar spine; and post-laminectomy syndrome. (Tr. 1429-1432.)

It was against the backdrop of this medical record that the ALJ conducted a second hearing concerning Smith's disability application on September 16, 2015. (Tr. 1031-71.) At this hearing Smith and a vocational expert both appeared and testified. (Id.) Following this hearing, on December 22, 2015, the ALJ issued a second decision denying this disability application. (Tr. 1003-21.)  In this adverse decision, the ALJ acknowledged that Smith had an extensive medical history relating to her chronic back pain, much of which post-dated the December 2009 medical opinion issued by the state agency physician. (Tr. 1015-19.) During this lengthy treatment, the ALJ found that Smith "was observed to ambulate with an antalgic gait, walk with an extreme limp, have a forward flexed stance and walk extremely slowly with a slight limp from a waiting room to an examination room, and to guard her back as she gets up and down." (Tr. 1015-16.) The ALJ also documented a protracted treatment history for this chronic back pain, much of which took place after the December 2009 state agency physician opinion, and

concluded that this course of treatment involved multiple treatment modalities including: "the utilization of prescribed pain medication, the use of heat, ice, a TENS unit, and topical ointment, . . . a history of physical therapy treatment, median nerve branch injections, epidural steroid injections, a rhizotomy procedure, and lumbar spine surgery." (Tr. 1016.) Furthermore, the ALJ found that the only treating source opinion describing Smith's condition and limitations during the course of this on-going therapy, Dr. Nawaz's 2011 medical source statement, concluded that Smith "is limited to substantially less than the full range of work at the sedentary exertional level and is not capable of working." (Tr. 1018.)

Notwithstanding this body of evidence, the ALJ denied Smith's application for benefits, finding that she was capable of performing a full range of sedentary work. (Tr. 1013.) In reaching this conclusion the ALJ gave limited weight to the treating source opinion of Dr. Nawaz. (Tr. 1018.) Instead, the ALJ conferred greater weight upon an opinion which the ALJ had discounted in 2012, the December 2009 state agency doctor's opinion, and "generally assign[ed] significant weight to th[e] [December 2009 state agency doctor's] opinion because it [wa]s consistent with the claimant's medical records on a longitudinal basis, including the lack of persistently documented abnormal clinical examination findings . . . ." (Tr. 1018.) The ALJ's decision assigning significant weight to this

December 2009 state agency opinion did not explain how that medical opinion had gained greater credence and weight in 2015 than it enjoyed in 2012 when the ALJ discounted this opinion, finding that "this opinion overstates the claimant's limitations." (Tr. 1081.) Moreover, this decision did not reconcile the ALJ's conclusion that this 2009 medical opinion was "consistent with the claimant's medical records on a longitudinal basis, including the lack of persistently documented abnormal clinical examination findings," (Tr. 1018), with the ALJ's findings that Smith "was observed to ambulate with an antalgic gait, walk with an extreme limp, have a forward flexed stance and walk extremely slowly with a slight limp from a waiting room to an examination room, and to guard her back as she gets up and down," (Tr. 1015-16), or the ALJ's description of the extensive treatment Smith received which included: "the utilization of prescribed pain medication, the use of heat, ice, a TENS unit, and topical ointment, . . . a history of physical therapy treatment, median nerve branch injections, epidural steroid injections, a rhizotomy procedure, and lumbar spine surgery." (Tr. 1016.)

This appeal then ensued. (Doc. 1.) On appeal, Smith argues, *inter alia*, that the ALJ erred in assigning significant weight to this state agency physician opinion while simultaneously rejecting the treating source opinion. This appeal is fully briefed by the parties, (Docs. 13, 17 and 19), and is therefore ripe for resolution.

For the reasons set forth below, we find that the ALJ's decision does not sufficiently articulate a legal and factual basis for the decision to assign significant weight to this temporally remote non-treating and non-examining state agency doctor's opinion, when the undisputed medical evidence shows that there was a significant body of medical opinion and treatment evidence which was never available to, or considered by, that state agency physician. Therefore, we will remand this case for further consideration by the Commissioner.

## III.  Discussion

### A.  Substantial Evidence Standard of Review

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a

claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying a plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final

decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The

question before this court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic legal requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for

rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

**B.** **Legal Standards Governing Assessment of Medical Opinion Evidence**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2) (effective Aug. 24, 2012, through Mar. 26, 2017).[1] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

---

[1] Some of the applicable regulations been revised since the ALJ issued the decision in this case. For instance, definition of "medical opinions," contained in 20 C.F.R. § 404.1527(a)(2) of the prior regulation is now designated as § 404.1527(a)(1) in the revised regulation. Throughout this opinion, the court cites to the version of the regulations in effect at the time the ALJ rendered his decision. Although the revised regulations may be worded slightly differently, the changes have no effect on the outcome of this case.

Yet, while these regulations call for the consideration of all medical opinions the regulations, case law construing those regulations, state a clear preference for the informed opinions of doctors who have actually treated or examined a claimant. This legal preference for treating source opinions is sometimes referred to as the treating physician rule and has been described by the courts in the following terms:

> An ALJ should give "treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). While contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded "more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429.

> Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008).

This preference for reliance upon treating source opinions is also articulated in the regulations that governed disability determinations in 2015. In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions

generally are entitled to more weight. See 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (effective June 13, 2011, through Mar. 26, 2017) (defining "treating source"). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

These enumerated factors also generally call for assigning greater weight to the opinions of physicians who actually treat, examine or care for claimants.

Yet, while the regulations understandably focus upon the nature and depth of a treating source relationship with a claimant, these regulations do not entirely discount the opinions of non-treating, non-examining medical sources like state agency physician. Quite the contrary, the regulations and case law recognize a role for these physicians in this decision-making process. At the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators. <u>See</u> SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. <u>Id.</u> At the ALJ and Appeals Council levels of the administrative review process, however, findings by non-examining state agency medical and psychological consultants should be evaluated as medical opinion evidence. 20 C.F.R. §404.1527(e) (effective Aug. 24, 2012, through Mar. 26, 2017). As such, ALJs must consider these opinions as expert opinion evidence by non-examining physicians and must address the opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record," but may in

appropriate cases be entitled to greater weight than other medical opinions. SSR 96-6p, 1996 WL 374180 at *2-3.

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of  Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

However, case law also cautions courts to take into account the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process. While this fact, standing alone, does not preclude consideration of the agency doctor's opinion, see Chandler v. Comm'r of

22

Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should be applied when evaluating reliance upon such opinions to discount treating and examining source medical statements. Therefore, where a state agency non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016). Thus, for example, it has been held to be error for an ALJ to rely upon a state agency doctor's opinion in denying a disability claim, when the medical record reveals that the claimant underwent surgery after the state agency physician completed the assessment of that claimant. This type of subsequent major medical procedure and treatment both as a matter of law and as a matter of common sense undermines the confidence which can be placed in a prior non-treating and non-examining source opinion. Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003). In short, it is well-recognized that:

> It can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued. See, e.g., Alley v. Astrue, 862 F.Supp.2d 352, 366 (D.Del.2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012). However, when a state agency physician renders an RFC assessment prior to a hearing, the ALJ may rely on the RFC if it is supported by the record

23

as a whole, including evidence that accrued after the assessment. See, e.g., Pollace v. Astrue, Civil Action No. 06–05156, 2008 WL 370590, at *6 (E.D.Pa. Feb. 6, 2008); see also Johnson v. Comm'r of Soc. Sec., Civil No. 11–1268 (JRT/SER), 2012 WL 4328389, at *9 n. 13 (D.Minn. Sept. 20, 2012); Tyree v. Astrue, No. 3:09–1091, 2010 WL 2650315, at *4 (M.D.Tenn. June 28, 2010).

Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013).

It is against these legal guideposts that we assess the ALJ's opinion in the instant case.

**C.** **The ALJ's Decision Does Not Provide an Adequate Rationale for Reliance Upon a Temporally Remote Non-treating, Non-Examining Source Opinion that Never Considered Substantial Medical Evidence Amassed After the Opinion Was Rendered.**

As we have observed, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). This cardinal principle applies with particular force to ALJ assessments of medical opinion evidence, as it is well-settled that  "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-

24

examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)).

Guided by these legal tenets we find in this case that the ALJ's decision to afford significant weight to a temporally remote, non-treating, non-examining state agency opinion, while discounting a contemporaneous treating source opinion, has not been adequately justified or supported on the record of these proceedings. Therefore, a remand of this case is necessary to further explain, or develop, this medical record.

On the unique facts of this case, the ALJ's reliance upon the December 2009 state agency doctor's opinion is particularly problematic on at least six scores. First, this judgment ran contrary to the general preferences articulated by regulations and case law that call upon ALJs to give significant weight to treating and examining source opinions, and to only favor an opinion rendered by a non-examining state agency physician when that opinion draws greater evidentiary support from the medical record.

Second, this aspect of the ALJ's decision did not account for the fact that this December 2009 state agency doctor's opinion was issued in connection with a prior, and different disability application, and was based upon a body of medical

evidence which had only very limited relevance to Smith's second disability claim. This second claim, which was filed in July of 2010, alleged a disability onset date of August of 2009. Thus, the issue before the ALJ on remand was the degree to which Smith was disabled due to chronic back pain from August 2009 through 2015. With the issue framed in this fashion, the December 2009 state agency doctor's opinion could, at best, speak only to Smith's medical condition and impairments during a four month span of time embraced by her second disability claim, from August through December 2009. It provided no informed insight on her condition after December of 2009. This temporal shortcoming in the December 2009 state agency opinion undermines the reliance that can reasonably be placed upon this particular state agency doctor opinion in subsequent years, and becomes particularly pronounced when this case is considered in light of the subsequent medical evidence.

Third, the decision to afford significant weight to this 2009 state agency opinion was particularly problematic when the ALJ rejected a more recent and contemporaneous treating source opinion which found that Smith was wholly disabled.

Fourth, the ALJ's reliance on this December 2009 non-treating and non-examining source opinion failed to sufficiently take into account a host of medical

complications experienced by Smith after this opinion was first issued, including spinal fusion surgery, and extensive chronic pain treatments spanning from 2010 through 2015. Indeed, the fact that Smith underwent spinal surgery following the issuance of the state agency doctor's opinion, standing alone, may sufficiently undermine the reliance that can be placed upon that 2009 state agency opinion to warrant a remand of this case. See Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003) (holding that an ALJ erred in relying upon a state agency doctor's opinion in denying a disability claim, when the medical record revealed that the claimant underwent surgery following the time when the state agency physician completed the assessment of that claimant.)

Fifth, the rationale for the ALJ's decision to afford this temporally remote opinion significant weight—the ALJ's conclusion that this 2009 opinion was consistent with the longitudinal medical records from 2009 through 2015—was not fully supported by the medical record, which contains substantial evidence documenting on-going and significant chronic pain experienced by Smith. In short, on the current administrative record we cannot reconcile the ALJ's conclusion that this 2009 medical opinion was "consistent with the claimant's medical records on a longitudinal basis, including the lack of persistently documented abnormal clinical examination findings," (Tr. 1018), with the ALJ's findings that Smith "was

observed to ambulate with an antalgic gait, walk with an extreme limp, have a forward flexed stance and walk extremely slowly with a slight limp from a waiting room to an examination room, and to guard her back as she gets up and down," (Tr. 1015-16), or the ALJ's description of the extensive treatment Smith received which included: "the utilization of prescribed pain medication, the use of heat, ice, a TENS unit, and topical ointment, . . ., a history of physical therapy treatment, median nerve branch injections, epidural steroid injections, a rhizotomy procedure, and lumbar spine surgery." (Tr. 1016.) Simply put, Smith's substantial treatment history since 2009, which included spinal fusion surgery, is inconsistent with the ALJ's finding that she lacked "documented abnormal clinical examination findings" after 2009.

Sixth, we note that there is an internal, and insufficiently explained, inconsistency between the degree of weight which the ALJ has given this 2009 state agency doctor's opinion at various times in the course of these proceedings. Indeed, the ALJ's reliance on this temporally remote non-treating and non-examining opinion has seemingly increased over time without an adequate explanation for how that opinion gained greater credence as it became more remote in time from Smith's actual medical condition. Specifically, when the ALJ first considered this particular opinion in the initial decision denying benefits to Smith

in April of 2012, the ALJ gave this 2009 opinion little weight, observing that "this opinion overstates the claimant's limitations." (Tr. 1081.) Three years later in December of 2015, when the ALJ was considered the same medical opinion following the remand of the case to the Commissioner for further proceedings, the ALJ now "generally assign[ed] significant weight to this opinion," (Tr. 1018), without an adequate explanation of how this opinion gained greater credence over time. The decision to give greater weight to the same evidence as that evidence grows more remote in time is sufficiently counter-intuitive, and the failure to adequately explain this choice is sufficiently material, to also compel a remand of this case for further consideration by the Commissioner.

## IV.   <u>Conclusion</u>

Taking all of these considerations into account, we conclude that the ALJ's decision to give significant weight to this temporally and topically remote non-examining source opinion, which could not take into account a host of intervening medical events, is not sufficiently supported by, or explained on the record before us. Therefore, we will direct that this case be remanded to the Commissioner for further development of the medical record through a consulting examination, or a comprehensive and timely state agency physician assessment of the entirety of

Smith's medical records, including surgical and treatment records since 2009 as well as the treating source opinion issued after the initial 2009 state agency review.

Yet, while case law calls for a remand and additional proceedings by the ALJ in this case to further assess this medical evidence, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

An appropriate order follows.

So ordered this 28th day of December, 2017.

*s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge